UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NATURAL RESOURCES DEFENSE
COUNCIL, INC., et al.,

                  Plaintiffs,

           - against -

NORMAN Y. MINETA,
Secretary of Transportation, et al.,

                  Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/3/05

OPINION
AND ORDER

04 Civ. 5380 (VM) (RLE)

**RONALD L. ELLIS, United States Magistrate Judge:**

## I. INTRODUCTION

On July 9, 2004 plaintiffs, three consumer and environmental non-profit organizations, filed this action under the Administrative Procedure Act, 5 U.S.C. § 706(2), challenging a February 19, 2004 rule by the National Highway Traffic Safety Administration ("NHTSA"), which extends for four additional years the special treatment accorded by the Alternative Motor Fuels Act of 1988 ("AMFA") to dual-fueled motor vehicles manufactured in model years 1993-2004 for purposes of determining manufacturer's compliance with Corporate Average Fuel Economy ("CAFE") standards. Plaintiffs filed the action on behalf of their members, who total more than 650,000, claiming that the extension will adversely affect those who purchase model year 2005-2008 vehicles because the vehicles will be less fuel-efficient and therefore consume more conventional fuel over their lifetime. Pending before the Court is defendants' application to depose five individual non-party members of plaintiffs' organizations who provided declarations in support of plaintiffs' standing. For the reasons set forth below, defendants'

application is **DENIED**. In addition, the Court finds that plaintiffs have standing to bring this action on behalf of their members.

## II. BACKGROUND

### A. The Statutory Framework

In 1975, in response to the oil crisis of the 1970s, Congress enacted the Energy Policy and Conservation Act ("EPCA") "to conserve energy supplies through energy conservation programs" and "to provide for improved energy efficiency of motor vehicles, major appliances, and certain other consumer products." 42 U.S.C. §§ 6201(4) and (5). The EPCA required the Department of Transportation to set average fuel economy standards for passenger automobiles and light trucks. These CAFE standards are minimum performance requirements for vehicles in terms of the average miles per gallon of fuel that a vehicle must be able to travel. Compl. at ¶ 11; *see generally* 49 U.S.C. §§ 32901 *et seq*. The EPCA does not require that individual vehicles meet the mileage standards. Rather, manufacturers are only required to meet an average level of fuel economy for their fleets manufactured in a given model year. If a manufacturer exceeds the CAFE requirements, it earns credits which it may apply forward or backward to other model years. **Id.** at ¶ 12; 49 U.S.C. § 32903(a). However, failure to meet the CAFE standard in a given model year, after considering available credits, subjects a manufacturer to financial penalties. Compl. at ¶ 12; 49 U.S.C. § 32912. The Environmental Protection Agency ("EPA") determines whether vehicles meet the established fuel-efficiency standards.

Congress passed the AMFA in 1988 to promote the development and use of alternative transportation fuels. Compl. at ¶ 13 (*citing* 42 U.S.C. § 6374 note of AMFA findings and purposes). As an incentive to manufacturers to make vehicles capable of operating on alternative

fuels, the AMFA provides for special treatment of fuel economy calculations for dual-fueled vehicles manufactured in model years 1993-2004. **Id.** The AMFA permits the Department of Transportation ("DOT") to extend the program for up to four additional years through model year 2008, taking into consideration whether the program has demonstrated progress towards the AMFA's goals. *See* 49 U.S.C. §§ 32905(f)-(g); Compl. at ¶ 13. Plaintiffs claim the NHTSA extended the program despite clear evidence that the incentive has failed to meet the intended goal. Compl. at ¶ 13. In particular, plaintiffs allege that the AMFA's calculation procedures inflate the actual fuel economy of dual-fueled vehicles for purposes of determining the manufacture's compliance with CAFE standards because the procedures assume the vehicles operate on both alternative and conventional fuel fifty percent of the time, when in fact they work on alternative fuel less than one percent of the time. **Id.** at ¶ 14 (*citing* 49 U.S.C. §§ 32905(b) and (d); Report to Congress at 40, 43, 45; 67 Fed. Reg. 10877). Manufacturers therefore earn special fuel-economy credit merely because their vehicles are capable of operating on alternative fuel even though they primarily operate on gasoline. **Id.** at ¶ 15. Plaintiffs believe that this scheme undermines the AMFA's intended goal of promoting fuel economy and reducing pollution. *See* **id.** at ¶¶ 16-17.

At Congress's direction, the DOT, together with the EPA and the Department of Energy, conducted a study of the CAFE treatment of dual-fueled vehicles and submitted a report of its findings, including conclusions on whether the incentive program should be extended. **Id.** at ¶ 18; *see* 42 U.S.C. § 32905(g). The agencies considered the availability to the public of alternative-fueled automobiles and alternative fuel; energy conservation and energy; and environmental considerations. **Id.** Plaintiffs claim that the agencies' findings clearly

3

demonstrated that an extension of the AMFA dual-fuel incentive program would not result in an increase in the use of or demand for alternative fuel, and instead would cause an increase in petroleum use and the emission of greenhouse gases, thereby increasing the nation's dependence on foreign oil and exacerbating global warming. Compl. at ¶¶ 19, 22. Despite these findings, as well as a study by the National Academy of Sciences which confirmed the agencies' analysis, the NHTSA extended the dual-fuel incentive program for an additional four years. Id. at ¶ 24. Plaintiffs have brought this action, claiming harm to their members as a result of the agency's determination.

**B. The Parties**

Plaintiffs are non-profit consumer and environmental advocacy organizations whose combined membership totals over 650,000 from all fifty states, the District of Columbia, and Puerto Rico. *See* Compl. at ¶¶ 2-4; Claybrook Decl. at ¶ 5; Ditlow Decl. at ¶ 2; Lopez Decl. at ¶ 7.[1] Their advocacy efforts focus on auto safety, and vehicle quality, reduction of the nation's oil consumption and dependence on foreign oil, as well as the adoption and enforcement of energy efficiency standards and laws on reducing pollution. Compl. at ¶¶ 2-4; *see generally* Claybrook Decl., Ditlow Decl., and Lopez Decl. The organizations have testified before Congress, participated in administrative rulemakings on proposed new standards, and participated in lawsuits to require or challenge action by government and particular industries. Id. With regard to the rulemaking at issue in this action, the organizations submitted comments to NHTSA

---

[1] "[Name] Decl." refers to the individuals whose declarations were submitted in support of plaintiffs' standing. The individuals include principals (Joan Claybrook, Clarence M. Ditlow, and Linda Lopez) and individual members (Richard Medlock, Arifa Goodman, Daniel N. Arshack, Daniel P. Goldman, and Mark Caron) of plaintiffs' organizations.

4

opposing the agency's proposed extension of the AMFA's special treatment accorded to dual fueled vehicles in calculating automobile manufacturers' average fuel economies. Claybrook Decl. at ¶ 4; Ditlow Decl. at ¶ 4; and Lopez Decl. at ¶ 8.

## III. DISCUSSION

An organization meets the standing requirement under Article III of the United States Constitution either by alleging injury to itself, or as a representative of its members. *See* **Havens Realty Corp. v. Coleman**, 455 U.S. 363, 378-79 (1982). To sue on behalf of its membership, the organization must demonstrate that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." **Hunt v. Washington State Apple Advertising Comm'n**, 432 U.S. 333, 343 (1977). It is undisputed that the plaintiff organizations satisfy the second and third prongs of this test. They seek to secure the opportunity for their members to have a choice of fuel-efficient vehicles. These interests are germane to the organizations' purposes to improve vehicle quality and fuel economy, as well as to curb harmful fuel emissions, oil consumption, and dependence on foreign oil. Compl. at ¶¶ 2-4; Claybrook Decl. at ¶¶ 2-4; Ditlow Decl. at ¶¶ 2-4; Lopez Decl. at ¶¶ 4-6. Efforts to advance these goals have included participating in agency rulemaking and legislative proceedings concerning proposed new standards, and submitting comments opposing NHTSA's proposal to extend the AMFA incentive program for dual-fueled vehicles. **Id.** In addition, it is unnecessary for individual members of any of the organizations to participate in the case because the complaint seeks declaratory and injunctive relief. *See* **Hunt**, 432 U.S. at 344.

Therefore, at issue in this action appears to be whether plaintiffs' members would otherwise have standing to bring this suit individually. To establish standing under Article III, a plaintiff must demonstrate 1) an "injury in fact" to himself that is a) concrete and particularized and b) actual or imminent, not conjectural or hypothetical; 2) that such injury is fairly traceable to the challenged conduct of the defendant; and 3) it is likely, rather than merely speculative, that the injury will be redressed by a favorable decision. **Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.**, 528 U.S. 167, 181-82 (2000). "To maintain a court challenge to NHTSA's action, [plaintiffs' members] must be able to show that they 'have been or will in fact be perceptibly harmed by the challenged agency action.'" **Competitive Enterprise Institute v. National Highway Traffic Safety Administration**, 901 F.2d 107, 112 (D.C. Cir. 1990) (citation omitted). The injury may be actual or threatened, *see* **Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.**, 454 U.S. 464, 471 (1982), but it must be "distinct and palpable." **Warth**, 422 U.S. at 501. There is no requirement that the injury be important or large; an "identifiable trifle" can meet the constitutional minimum. **United States v. Students Challenging Regulatory Agency Procedures**, 412 U.S. 669, 689 n.14 (1973).

In this action, plaintiffs have demonstrated that at least one of its members has standing to sue in his or her own right; therefore, plaintiffs meet the constitutional standing requirements to sue in a representative capacity on behalf of their members. In particular, plaintiffs have submitted declarations from five members from their organizations, as well as from the organizations' principals, which sufficiently establish the injury-in-fact, causation, and redressibility requirements to invoke standing. To demonstrate injury-in-fact, the individual

6

members, who reside across the United States and whose membership to plaintiffs' organizations began between 1990 and 2003, have declared their intent and interest in purchasing a new truck sometime in the next four years, preferably from a domestic manufacturer, and have specified that fuel efficiency is either the most, or one of the most, important features informing their decision to make such a purchase. Declaration of Richard Medlock at ¶¶ 1-3; Declaration of Arifa Goodman at ¶¶ 1-3; Declaration of Daniel N. Arshack at ¶¶ 1-3; Declaration of Daniel P. Goldman at ¶¶ 1-3; and Declaration of Mark Caron at ¶¶ 1-3. The declarants' interests in, and intentions to purchase, the most fuel-efficient domestic light trucks are based on individual circumstances. *See* Medlock Decl. at ¶ 2 (stating she buys on average a new pickup truck, primarily manufactured by Ford, every two to three years, for professional purposes, and intends to purchase two trucks in the next four years); Goodman Decl. at ¶ 2 (planning to purchase a light truck in the next four years for purposes of facilitating the building of her home); Arshack Decl. at ¶ 2 (needing to purchase a vehicle within the next two years to replace his 10-year old minivan, and specifying his preference for a domestic minivan model); Goldman Decl. at ¶ 2 (intending to replace his older model minivan for a new one in the next few years, preferring a domestic model); Caron Decl. at ¶ 2 (needing to purchase a vehicle in the next two years).

In addition, the declarants claim that the dual-fuel incentive program has injured them because the credits earned by the automobile manufacturers have enabled them to produce less fuel-efficient light trucks, which are more expensive to operate and emit more greenhouse gases. *See* Medlock Decl. at ¶¶ 3-5; Goodman Decl. at ¶¶ 2-5; Arshack Decl. at ¶¶ 2-5; Goldman Decl. at ¶ 3-5; Caron Decl. ¶ 3-5. The program, in turn, has resulted in a limited selection of the most fuel-efficient trucks to choose from, id., and has even caused a member to intentionally refrain

from purchasing a domestic sports utility vehicle because of the poor selection of domestic fuel-efficient models. Caron Decl. at ¶ 2. The declarants allege that an extension of this program therefore will cause them to have fewer opportunities to purchase the most fuel-efficient and economical domestic made trucks than would otherwise be available to them. *See* Medlock Decl. at ¶ 5; Goodman Decl. at ¶ 5; Arshack Decl. at ¶ 2, 5; Goldman Decl. at ¶ 2, 5; Caron Decl. ¶ 2, 5. Consequently, they may be forced to consider foreign manufacturers for a better selection of vehicles from which to make their ultimate purchase. **Id.**

These averments present more than conclusory allegations about the impact of defendants' actions upon their choice of and use of fuel-economy automobiles, and suggest more than mere speculative intentions to purchase fuel-efficient automobiles. *See* **Lujan v. National Wildlife Federation**, 497 U.S. 871, 888 (1990) (finding affiants' general allegations of injury by government agency and failure to provide specific facts supporting those allegations to be insufficient to support standing by affiants' member organization); **Lujan v. Defenders of Wildlife**, 504 U.S. 555, 564 (1992) (finding affiants' "some day" intentions, without a description of concrete plans, or specification of when the some day will occur, to be inadequate to support the "actual or imminent injury" requirement to invoke standing). Thus, the members have sufficiently demonstrated that they have sustained or face the threat of injury-in-fact by defendant's actions.

The non-party members' declarations corroborate the declarations from the plaintiff organizations' principals, which state that a significant number of the organizations' members have indicated, for example, through e-mails, correspondences, and phone calls, their intention to purchase new cars and light trucks over the next four years, and that they place a high priority on

fuel-efficiency and low emissions in determining what models to purchase. Claybrook Decl. at ¶ 7; Ditlow Decl. at ¶ 7; Lopez Decl. at ¶ 7. Members have complained that despite their preference for and desire to purchase a light truck that has high fuel economy ratings and that is better for the environment, they have found only a limited selection of such trucks from which to choose. Claybrook Decl. at ¶ 7. The organization principals also aver that members who purchase new vehicles over the next four years will be harmed by the extension of the dual-fuel incentive program because the credits the program allows manufacturers to earn enables them to produce vehicles that have lower fuel economy than they would otherwise be required to produce in order to meet CAFE standards. Id. at ¶ 6; Ditlow Decl. at ¶ 6; Lopez Decl. at ¶ 8. The automobiles purchased, therefore, will be less fuel-efficient and demand higher fuel costs to operate. Id. Even though plaintiffs, either by these declarations, or by any other evidence, do not guarantee that any particular member of their organizations will actually purchase a vehicle during the dual-fuel incentive program's extended period, the sheer size of the organizations' membership makes it highly plausible that at least one member will purchase a vehicle during that time. Moreover, it is reasonable to assume that some member of an organization whose goals and work focus on automobile fuel-economy will be in the market for a fuel-efficient vehicle.

In addition to satisfying the injury-in fact prong of the tripartite standing test, plaintiffs' declarations also satisfy the causation and redressibility requirements. As to causation, plaintiffs have detailed the connection between defendants' actions and their members' alleged injury. They have sufficiently pled that defendants' dual-fueled credit program results in less fuel-efficient vehicles overall than would otherwise be required of manufacturers to meet the

applicable CAFE standards. Consequently, plaintiffs' members have fewer options of fuel-efficient vehicles to choose from. Granting plaintiffs' relief, therefore, to vacate the NHTSA's final rule to extend the incentive program, enjoin the DOT from extending the CAFE incentive program, and void CAFE credits for future years would redress their alleged injury.

Defendants, however, claim they are entitled to depose the five non-party representative members in order to test the averred facts in the members' declarations, as well as to develop specific facts in support of their own standing defense. Defendants' Letter in Support of Deposing Non-Party Members, at 2. Defendants seek information, for example, on how concrete are the declarants' plans to purchase new trucks; what particular fuel efficient vehicles the declarants wish were available; whether the declarants have shopped for the most fuel efficient vehicles currently on the market; and what role, if any, brand loyalty plays in the declarants' injury. **Id.** The Court finds that the declarations present detailed information concerning the members' alleged injury-in-fact, and its relation to defendants' conduct, and that the declarations alone are sufficient for defendants to argue their standing defense. More specifically, the Court finds that the declarations support plaintiffs' standing to bring this action on behalf of their members.

Plaintiffs' standing would be established by the organization principals independent from the declarations from the five non-party members. "There is[] no absolute requirement that individual members be identified in order to confer organizational standing." **NYC C.L.A.S.H., Inc. v. City of New York,** 315 F.Supp. 2d 461, 468 (S.D.N.Y. 2004) (J. Marrero). Rather, it is sufficient that an organization "allege that its members, or any *one* of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make

10

out a justiciable case had the members themselves brought suit." <u>Id.</u> (*quoting* <u>Warth</u>, 422 U.S. at 511) (emphasis added); *see also* <u>Gladstone Realtors v. Village of Bellwood</u>, 441 U.S. 91, 115 n.31 (1979) (standing may be found at the early stages of litigation, sufficiently supported by facts alleged in the complaint and revealed in initial discovery, but the matter of standing may necessarily be revisited if these facts are not "supported adequately by the evidence adduced at trial"). Plaintiffs have made the required allegations to invoke standing, and have supported the allegations with declarations by the organizations' principals. The declarations from the non-party members corroborate and give context to the principals' declarations. The non-party members represent a snapshot of the membership which the principals declare consists of many individuals who place fuel economy and environmental concerns as a priority in their consideration to purchase a new vehicle over the next four years. Plaintiffs conceivably could replace these five non-party members with other members, and even with one member. Thus, defendants' purported entitlement or need to depose these five members demonstrates the futility in doing so for purposes of testing the averred facts. Moreover, any potential benefits that could develop from taking the members' depositions are outweighed by the unreasonable burden that would be placed on plaintiffs, as their members and those whose declarations they submitted live in different states across the United States. Defendants' offer to accommodate the members by flying to their home state locations to take the members' depositions does not alleviate that burden.

In sum, the Court finds that defendants are not entitled to depose non-party members of plaintiff organizations in order to argue their standing defense, and that plaintiffs have sufficiently demonstrated that they have organizational standing to bring this action against defendants.

## IV. CONCLUSION

For the foregoing reasons, defendants' application is denied and plaintiffs have standing to bring this action on behalf of its members.

**SO ORDERED this 29th day of April 2005**
**New York, New York**

_____
**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**